**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GARY PAUL TOPLAK ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 11-1493 |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | |
| BABCOCK & WILCOX TECHNICAL ) | |
| SERVICE GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

### I.   MEMORANDUM

Plaintiff Gary Paul Toplak ("Plaintiff") brings the instant cause of action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. § 951, *et seq*.  Plaintiff alleges that Defendant, his former employer, unlawfully discriminated against him on the basis of his disability when it terminated his employment as part of a reduction in force ("RIF") in 2010, and subsequently refused to interview him for another position.  For the reasons stated below, Defendant's motion for summary judgment will be granted.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was employed by Defendant as a Technologist 3/Safety Engineer at Defendant's Bettis-Pittsburgh Project, where Defendant provided environmental remediation services as the site decontamination and decommissioning subcontractor for Bechtel Marine Propulsion Corporation. Comp. (Doc. 1) at ¶¶ 11, 13-14.  During his employment with Babcock & Wilcox Technical Services Group ("B&W"), Plaintiff had undergone numerous surgeries on his knees, back and hips.  Concise Statement of Undisputed Material Facts ("Concise Statement") (Doc.

36-1) at ¶14. As a result, Plaintiff's mobility was significantly limited and he required accommodation from Defendant to perform at least some aspects of his employment – specifically, Plaintiff generally was assigned to work only in non-radiological areas. Id. at 15-16. This alleviated the need for Plaintiff to perform whole-body "frisking," which involved an employee using an instrument to scan his body to ensure it contained no contamination. Id. at 16. In situations where a whole-body frisk could not be avoided, Defendants accommodated further by affording him the assistance of a Radiological Controls Technician ("RCT") to perform the frisk for him. Id. at 17.

In Summer 2010, B&W discovered the government contract that B&W had been working on with the prime contractor, Bechtel, would end on October 1, 2010, and be awarded to a different contractor, B&W Shaw Remediation, LLC ("BWSR"). Under this new contract, BWSR would serve as the new Bettis Site D&D Subcontractor, while B&W would continue to serve as a subcontractor to the project. Id. at 27. As a result of this new contract, a reduction in force (RIF) was required, which necessitated the elimination of one of the three existing Safety Engineers. Id. at 28, 31.

B&W had a Management Guide for Workforce Reductions (RIF Guidelines) that established policies and procedures for an RIF. Id. at 32. These guidelines required a department manager to rank employees based on job performance using "RIF Scoresheets" and then compare employees in a "Layoff Comparison Form." Id. at 33-34. When these guidelines were applied to the three Safety Engineers in Plaintiff's department, Plaintiff received the lowest overall score. Id. at 36. As a result, Plaintiff was subsequently offered an hourly position as a Class V Contamination Worker, which Plaintiff declined. Therefore, on September 29, 2010, Plaintiff's employment with B&W was terminated. Id. at 45-46.

In September 2010, around the same time as the RIF was being conducted, Plaintiff submitted an application for the available position of Radiological Controls Training Coordinator ("Rad Con Trainer"). The job description listed the following "desired" qualifications for the position: current or prior Article 108 qualification; a Bachelor's Degree in a Technical discipline; and a Supervisor Radiological Qualification. Id. at 48-49. Plaintiff, who did not possess the aforementioned qualifications, was not chosen for an interview, and ultimately B&W hired another candidate, Michael Porto, for the position. Id. 56, 59. Plaintiff has not applied for any additional positions with B&W since this rejection. Id. at 64.

Plaintiff filed this lawsuit (Doc. 1) on November 22, 2011, alleging that B&W discriminated against him, on the basis of his disability, by choosing him for the September 2010 lay-off and by failing to interview him for the Rad Con Trainer position. B&W has filed a Motion for Summary Judgment (Doc. 35), pursuant to Rule 56, asserting that Plaintiff cannot make a *prima facie* case of discrimination under either theory, and that even if Plaintiff succeeds in his *prima facie* case, Plaintiff cannot show that their legitimate non-discriminatory reasons for these employment actions are pretext for discrimination.

**ANALYSIS**

Pursuant to the burden shifting framework adopted by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to succeed on an ADA claim,[1] a plaintiff must first show, by a preponderance of the evidence, a *prima facie* case of discrimination. Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 938 (3d Cir. 1997). Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate,

---

[1] The Third Circuit considers claims under the ADA and the PHRA to be co-extensive; therefore, disposition of a case under the ADA framework will also dispose of the related claim under the PHRA. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

nondiscriminatory reason for the adverse employment action. Id. (citing McDonnell Douglas, 411 U.S. at 802). The employee then has an "opportunity to prove that the proffered reason for [the adverse employment action] was in fact pretext" for discrimination. Id. (citing McDonnell Douglas, 411 U.S. at 804) (internal quotations omitted).

A plaintiff can survive a defendant's motion for summary judgment, by either "(i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). In doing so, the plaintiff's evidence rebutting the employer's reasons must permit a factfinder to reasonably infer that each of the employer's given reasons was either "a *post hoc* fabrication or did not actually motivate the employment action." Id. To discredit the employer's reason, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the reason such that a "reasonable factfinder could rationally find them unworthy of credence." Id. at 765 (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)).

Here, Plaintiff asserts that Defendant discriminated against him on the basis of disability by (i) choosing him for the RIF; and (ii) failing to interview him for the Rad Con Trainer position. Therefore, the Court will consider each of those theories individually, to determine whether Defendant is entitled to summary judgment.

A. **Reduction in Force (RIF)**

With regard to the RIF, Defendants argue that Plaintiff cannot establish a *prima facie* case of discrimination, and regardless, Plaintiff cannot show that their legitimate non-discriminatory reason for Plaintiff's termination is pretext for discrimination. Because the Court

agrees with Defendant that Plaintiff cannot show that the reason given by Defendant was pretext, the Court will not address whether Plaintiff has established a *prima facie* case of discrimination.

Defendant's reason for terminating Plaintiff is that their new contract necessitated an RIF and, as a result, B&W had to terminate one of the three Safety Engineers. Defendant asserts that Plaintiff was chosen for the termination because he was the least qualified of the three. Def.'s Br. (Doc 36) at 11-12. Plaintiff attempts to show that the reasons given by Defendant are pretextual by pointing out that the factors used in evaluating the Safety Engineers were primarily subjective and thus a reasonable jury could conclude that the subjective data were manipulated and he was underrated for reasons related to his disability. Pl.'s Br. Opp. (Doc 38) at 9. He points to the fact that the values given in the "Essential/Critical Skills" and "Annual Evaluation" categories were subjective and comprised 80% of the lay-off evaluation and that one of the other Safety Engineers, Hodgson, was not employed with B&W long enough to receive an annual evaluation. Id. at 7, 9.

The Court disagrees that Plaintiff has either (i) discredited Defendant's proffered reason or (ii) showed that discrimination was more likely than not a motivating or determinative cause of the lay-off, as is required to survive summary judgment. See Fuentes, 32 F.3d at 764. In fact, the record is void of any indication that Plaintiff's disability played any role in the RIF. Instead, the record reflects that Defendant had specific procedures in place for RIFs, and Defendant followed these procedures across the board. Defendant's "Management Guide for Salaried Workforce Reductions," dated June 2006, lays out a procedure for "involuntary reduction in force of salaried employees." Def.'s Ex. N (Doc. 36-14). These procedures included a rating system and indicated certain criteria to be considered in determining who will be retained, including: possession of critical/essential skills, performance, transferability of job skills and

education/training.  Id.  The policy provided that each evaluated employee would then be ranked from lowest to highest and placed on a "layoff comparison form."  Id.

The record shows that not only were all three safety engineers evaluated using these designated criteria and then placed on the layoff comparison form,  but the same criteria were used to evaluate all individuals affected by the 2010 RIF, beyond Plaintiff's department.  See Def.'s Ex. O (Doc 36-15); Def.'s Ex. P (Doc 36-16): Def.'s Composite Ex. A (Doc. 44-1). The RIF Scoresheets for the Safety Engineers show, and Plaintiff does not dispute, that he received the lowest score of the three safety engineers.  Def.'s Ex. O; Concise Statement at ¶ 37.  The scores on the RIF Scoresheet were assigned to Plaintiff by his manager, Robert Macfarlane, and the scores, the notes in Plaintiff's 2008 and 2009 performance review, and the testimony of Mr. Macfarlane corroborate one another in pointing out Plaintiff's weaknesses in his performance. See Def.'s Ex. O (Doc. 36-15); Def.'s Ex. H (Doc. 36-8); Def.'s Ex. F (Doc. 36-6) at 21-23.  Plaintiff himself even acknowledges that he was "unfamiliar with in-depth regulatory reviews" and that he did not know whether the newer engineer, Hodgson, deserved a better evaluation than him.  Concise Statement at ¶ 40; Def.'s Ex. E (Doc. 36-5) at 67. Notwithstanding Plaintiff's bald speculation, there is no evidence in the record that the factors on the Scoresheets were manipulated in any way to take account of Defendant's disability. See Kautz v. Met-Pro Corp., 412 F.3d 463, 472 (3d Cir. 2005) (finding "mere speculation, intuition or guessing" insufficient to establish pretext).

Plaintiff also asserts that the only objective qualification in the matrix, education, did not include alternatives such as experience. Pl.'s Br. Opp. (Doc. 38) at 9.  However, it is not for the Court to decide which factors that an employer should have considered in his decision making, "since the factual dispute at issue is whether discriminatory animus motivated the employer, not

whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765; see also Kautz, 412 F.3d at 471 ("[I]t is axiomatic that the mere fact that a different, perhaps better, method of evaluation could have been used is not evidence of pretext unless the method that was used is so deficient as to transgress the Fuentes standard.").

Though Plaintiff argues that he was chosen for the layoff because of his disability, he acknowledges that this was "an assumption" he made and that no one said anything to him indicating that his disability played a part in the evaluations. Def.'s Ex. E (Doc. 36-5) at 61. However, Plaintiff cannot meet his burden by mere speculation or intuition. Kautz, 412 F.3d at 472. Therefore, the Court finds that Plaintiff has not met his burden in the McDonnell Douglas framework of showing that Defendant's legitimate non-discriminatory reason for his termination was pretextual, and thus Defendant is entitled to summary judgment on this claim.

### B. Failure to Interview

With regards to the Rad Con Trainer position, Defendant argues that Plaintiff cannot make a *prima facie* case of discrimination and that regardless, Plaintiff is unable to show that Defendant's reasons for not interviewing Plaintiff for the Rad Con Trainer position are pretextual. Again, because the Court agrees with the Defendant that Plaintiff cannot show pretext, the Court will not reach the issue of whether Plaintiff can establish a *prima facie* case.

Defendant asserts that its reason for not selecting Plaintiff to interview for the position of Rad Con Trainer is that he did not meet the desired qualifications for the position. Def.'s Br. (Doc. 36) at 18. Plaintiff, in an attempt to show pretext, points to an email exchange between Defendant's Human Resources Manager, Darlene Macfarlane, and her supervisor, Susan Alexander. Pl.'s Ex. 5 (Doc. 40-5). The exchange takes place in September 2010 and discusses the available Rad Con Trainer position. Ms. Macfarlane's email to Ms. Alexander asked: "are

we obligated to interview [Toplak] even though he doesn't meet all of the "desired job requirements?" Ms. Alexander responded that Plaintiff should only be interviewed if he meets the required qualifications. Ms. Macfarlane responded: "I was told that . . . our training person is required to qualify to a level of employee they are training (RCT's). [Toplak] would not be able to qualify to that level due to a medical condition (double hip replacement – can't touch his toes)." Ms. Alexander then answered: "If it is not in writing, you run the risk of an ADA challenge. I would still recommend interviewing him." Id.

Plaintiff argues that a jury could infer from this email exchange that Plaintiff was not chosen for an interview because of his disability, rather than his lack of desired qualifications as asserted by Defendant. Pl.'s Br. Opp. (Doc. 38) at 11. However, taking the record as a whole, the Court finds that Plaintiff has neither (i) discredited Defendant's proffered reason, nor does (ii) the email show that discrimination was more likely than not a motivating or determinative cause of Defendant's failure to interview Plaintiff, as required to survive summary judgment. See Fuentes, 32 F.3d at 764.

Defendant asserts, and the record reflects, that there is no indication that Darlene Macfarlane had any decision making authority with regard to which candidates would be interviewed for the position of Rad Con Trainer. Def.'s Reply Brief (Doc. 44) at 5. In his declaration, Craig Ulmer, the Radiological Controls Operations Manager at B&W, states that Ms. Macfarlane collected, but did not review, the resumes for the position and then passed them along to him and Christopher Scott, the Acting Training Manager at the time, who both made the decision of who to interview. Def.'s Ex. T (Doc. 36-20) at ¶¶ 4, 8, 11. Mr. Ulmer testified that Ms. Macfarlane had no decision making authority and if she "possessed her own, independent opinion regarding what she perceived to be the applicants' qualifications for the position or who

we should or should not interview, I did not ask for it nor was I ever aware of it." Id. at ¶ 8. Further, the record provides no indication that Mr. Ulmer or Mr. Scott ever saw Ms. Macfarlane's email or in any way were aware of her opinion and, therefore, logically Mr. Ulmer and/or Mr. Scott could not have acted on the basis of this comment.

To the contrary, the record provides ample evidence supporting the notion that Plaintiff's lack of qualifications, especially his lack of a current or prior Article 108 qualification, was the reason that he was not chosen for an interview. The "Application Matrix," used my Mr. Ulmer and Mr. Scott during the selection process corroborates the deposition testimony of B&W representatives, Mr. Ulmer and Ms. Macfarlane, regarding the reason for not interviewing Plaintiff. Mr. Ulmer testified that while a current or prior Article 108 qualification was only listed on the job description as "desired," he and Mr. Scott decided only to interview candidates with this qualification because they intended to use the Rad Con Trainer for other roles where it would be required. Def.'s Ex. T (Doc. 36-20) at ¶¶ 6, 12. Thus, they only granted interviews to the three candidates who had that qualification, and Plaintiff was not chosen for an interview because he lacked the Article 108 qualification, a Bachelor's Degree and a Supervisor Radiological Qualification. Id. at 12. Likewise, Ms. Macfarlane testified that the reason Plaintiff was not interviewed was because he did not have the Article 108 qualification. Pl.'s Ex. 13 (Doc. 40-13) at 30. The application matrix shows that all three candidates chosen for interviews all had either a current or prior 108 qualification. Def.'s Ex. V (Doc. 36-22).

The record does reflect that Mr. Ulmer knew Plaintiff received accommodations in his previous position, because he was copied on an email in 2008 explaining such accommodations; however, there is no indication in the record that this awareness played any role in his decision not to interview Plaintiff for the available position. See Pl.'s Ex. 1 (Doc. 40-1).

Taking the record as a whole, Plaintiff has not met his burden of establishing Defendant's reasons for not hiring Plaintiff for the Rad Con Trainer position were a pretext for discrimination based on his disability. The email, when viewed in light of the record that fully supports Defendant's reasons for not interviewing Plaintiff and lacks any indication of a discriminatory motive, would not permit a factfinder to reasonably infer that the reason given by Plaintiff was either a *post hoc* fabrication or did not actually motivate the decision to not interview Plaintiff. See Fuentes, 32 F.3d at 764.  Nor does the record provide such implausibilities or inconsistencies that would allow a reasonable factfinder to find the reason given by Plaintiff "unworthy of credence."  See id. at 765.  Therefore, Defendant is entitled to summary judgment as a matter of law.

## II.     ORDER

For the reasons stated above, the Court hereby orders that Defendant's Motion for Summary Judgment (Doc. 35) is **GRANTED**.

IT IS SO ORDERED.

BY THE COURT:

September 27, 2013

s\Cathy Bissoon
CATHY BISSOON
UNITED STATES DISTRICT JUDGE

cc (via ECF email notification):

All Counsel of Record